AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America <br> v. <br> **FRANK JOSEPH SMITH** <br><br> *Defendant(s)* | ) ) ) ) ) ) ) <br> Case No. 12-8311-DLB |

FILED by ___ D.C.
AUG - 3 2012
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 2011 through August 2, 2012__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 2251 | Production of Child Pornography |
| 18 U.S.C. Section 2422(b) | Enticement of a Minor to Engage in Unlawful Sex Act |

This criminal complaint is based on these facts:

Please see attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Christina J. Pryor
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __08/03/2012__

_____
*Judge's signature*

City and state: __West Palm Beach, Florida__    U.S. Magistrate Judge Dave Lee Brannon
*Printed name and title*

## AFFIDAVIT

Your affiant, Christina J. Pryor, being duly sworn, does hereby depose and state as follows:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed for the past three years. I am currently assigned to PB-2, the Violent Crimes and Major Offender Squad of the Palm Beach County Resident Agency, Miami Division. Among my responsibilities as a Special Agent are investigating crimes against children, particularly offenses involving child pornography and the exploitation of children to include child prostitution.

2. The facts set forth in this affidavit are based in part on my personal knowledge, information obtained throughout this investigation by others, including other law enforcement officers, and information gained from my training and experience. I am familiar with the facts and circumstances of this investigation. I have received training in the area of child prostitution and child exploitation through the FBI. I also have assisted in child pornography and child exploitation investigations, which have involved reviewing examples in all forms of media including computer media, and have discussed and reviewed these materials with other law enforcement officers.

3. I am investigating the activities of FRANK J. SMITH, JR. date of birth XX/XX/, 1953 (for purposes of this affidavit, dates of birth are partially redacted). I am submitting this affidavit in support of a criminal complaint charging FRANK J. SMITH JR with violations of 18 U.S.C. §§ 2251(a) and 2422(b). As will be shown below, there is probable cause to believe that SMITH persuaded, induced, enticed, or coerced a minor to engage in sex acts for the purpose of producing a visual depiction of such conduct and used a facility or means of interstate or foreign commerce to persuade, induce, entice, or coerce a minor to engage in any sexual activity for

which any person can be charge with a criminal offense or attempt to do so.

4. The statements in this Affidavit are based in part on information provided to me by Detective Danielle D. Hirsch, Jupiter Police Department, and on my investigation of this matter. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint charging SMITH with violations of 18 U.S.C. §§ 2251(a) and 2422(b), I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to charge SMITH with violations of Title 18 U.S.C. §§ 2251 and 2422.

## STATUTORY AUTHORITY

5. This investigation concerns alleged violations of Title 18, United States Code, §§ 2251 and 2422(b). Section 2251 (a) establishes that, "Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory of Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed."

6. Title 18, United States Code, Section 2422(b) makes it a federal criminal offense for any person to knowingly use the mail or any facility or means of interstate or foreign commerce, that is a computer, smart phone, internet or backpage.com, and who knowingly persuades, induces, entices or coerces any individual who has not attained the age of 18 to engage in any sexual activity for which any person can be charge with a criminal offense or attempt to do so.

## BASIS FOR FACTS
## CONTAINED IN THIS AFFIDAVIT

8. On February 16, 2012, F.G.C., a cooperating witness (CW1) date of XX/XX/1993 was interviewed at the West Palm Beach Police Department by Special Agents of the FBI as part of an ongoing child prostitution investigation.

9. CW1 described that approximately two weeks prior to the interview, she had responded to a prostitution call with an individual by the name of "FRANKIE" (Last Name Unknown). CW1 described "FRANKIE" as an older white male. "FRANKIE" showed CW 1 videos contained in his cellular telephone that depicted what appeared to be underage females engaging in sexually explicit conduct. CW1 later identified a Florida Driver's License photograph of FRANK J. SMITH, JR., as the person she knows as "FRANKIE."

10. On August 2, 2012, FBI agents were contacted by the Jupiter Police Department in reference to SMITH. On July 28, 2012, the Jupiter Police Department received information from West Palm Beach Police Detective Mark Vertefeuille. Detective Vertefeuille advised that during a lewd battery investigation that he was conducting (which led to an arrest and confession), his fifteen year old victim, B.H, advised that she also had sexual contact with a much older man named FRANK SMITH in Jupiter.

11. On July 28, 2012, B.H was interviewed in the presence, and with the consent, of her mother at their residence. During the course of a sworn audio taped interview, B.H. advised that sometime after she turned fifteen (which was in August of 2011), her friend T.H. moved in with her and her mother at their current apartment. B.H. advised that at the time T.H. was working for an escort service (not further indentified), and she introduced B.H. to SMITH, who was one of her customers. At the time T.H. was approximately fifteen years of age, according to B.H. The introduction to Smith occurred sometime after August 2011.

12. B.H. described SMITH, and she advised that he was an older white male in his 60's with slicked back hair and a big nose. B.H. was shown a photo lineup which contained SMITH in position number three. B.H. immediately picked out number three as the person she knows as FRANK SMITH. B.H. was also shown a photo of the home located at 18900 Misty Lake Drive, and she identified the residence as SMITH's home.

13. B.H advised that Smith would come and pick the girls up at their home in West Palm Beach on a weekly basis. SMITH would take them back to his house in Jupiter, to the beach, or out to eat. B.H. advised that SMITH drove a white Mercedes four door sedan. She advised that he also had a white Hyundai and a Harley Davidson motorcycle. B.H. advised that SMITH would supply them with alcohol and marijuana at his house. B.H. also advised that SMITH provided T.H. with Xanax.

14. B.H. stated that the first time she and T.H went to SMITH's house; she stayed in the living room while SMITH and T.H. went into the bedroom and had sex. B.H. advised that she knew this because T.H. came out of the room naked. T.H. also told B.H. that she has sex with SMITH for money. From what she was told by T.H., SMITH would pay T.H. between $100.00 and $150.00 each time she had any sexual contact with him. B.H advised that every time they

met up with SMITH, there would be some type of sexual contact between him and T.H., or between her and T.H. or between him and B.H. She stated that she has seen T.H. perform sexual acts with SMITH, and that she has seen him give her money for those acts. When asked what sexual acts T.H does with SMITH, she stated that T.H would perform oral sex on SMITH, SMITH would perform oral sex on T.H., and they would have sexual intercourse.

15. B.H. advised that initially SMITH had told her several times that he wanted to have sex with her, but she refused. She advised that at some point, T.H. came to her and said that SMITH wanted to watch them perform oral sex on each one another for money. B.H. advised that she agreed to engage in the sexual act, and that all three of them went into SMITH's guest bedroom. B.H. described that SMITH had an office and that she observed a computer in the office. B.H. stated that she and T.H. performed oral sex on each other while SMITH watched them and videotaped them with his cellular phone. She stated that they were both paid $100.00. She advised that she saw the video of herself and T.H. on SMITH's cellular phone.

16. B.H. advised that over a period of about seven months, she and T.H. performed oral sex on each other at SMITH's request on several occasions. They were paid for the acts by SMITH on each occasion. B.H. could recall performing oral sex with T.H. at least two times in the living room, and at least three times in the guest room while SMITH either watched or videotaped them on his cell phone.

17. B.H. advised that sometime between January 2012 and March 2012, she performed oral sex on SMITH one time at his request and was paid $150.00. B.H. advised that SMITH videotaped her performing oral sex on him. She stated that during that same time period, he also took her and T.H. to a Hilton Hotel in Daytona where B.H. and T.H. performed oral sex on each other and were paid for their acts. B.H. advised that she remembers that the sexual acts

performed in Daytona by herself and T.H. were videotaped by SMITH on his cellular phone because she saw the video. B.H advised that the majority of the sexual activity between herself, T.H. and SMITH occurred between January of 2012 and March of 2012.

18. B.H. advised that on one occasion, which she believed to be in March of 2012, SMITH brought her to a sex shop on Northlake Blvd, bought her a purple dildo, and they went back to his house. She then masturbated with the dildo on his bed in the master bedroom at his request while he videotaped her on his cell phone. B.H. advised that she was paid $150.00 on that occasion.

19. B.H. advised that SMITH has also shown her videos of a girl known to her as C. B. performing oral sex on SMITH. She stated that SMITH was the one who showed her the video of C. B. B.H. stated that she did not know how old C.B. LNU was, and she believed that the video with C.B. LNU was made before she got to know SMITH. B.H. also advised that she has seen a sexual video with a girl named A.P. She advised that A.P. and C.B. are currently living at SMITH's house.

20. It should be noted that on September 22, 2011, SMITH reported to the Jupiter Police Department a burglary to his home in which several guns were taken. In the report, SMITH advised that he was helping a seventeen year old girl named A.P. get into rehab. He advised that on September 20, 2011, he drove to Boca to pick A.P. up, and that she stayed with him until September 20, 2011. SMITH advised that he believed that A.P.'s sister M.P. was involved in the burglary. He stated that A.P. was being prostituted by her sister M.P. Also, during the same time period, this Affiant received information that a juvenile prostitute, A.P. was doing business with SMITH in Jupiter. FBI agents subsequently identified A.P. and interviewed her. B.H. was shown a photo of A.P., and asked her if this was the A.P. that was currently living with SMITH,

and the same A.P. that she saw performing sexual acts on SMITH on his cell phone prior to March of 2012. B.H. advised that A.P. was the same A.P. that she knew and saw in the video. In March of 2012, A.P. would have been seventeen years of age.

21. B.H. advised that she has only seen the video of herself and other girls involved in sexual acts with each other and SMITH on SMITH's cellular phone. She advised that she believed the phone is an Apple iPhone with a black cover, and that the telephone number is (561) 284-9364. When SMITH reported his house burglarized in 2011, he gave this same number as his contact number.

22. On August 2, 2012, the Jupiter Police Department executed a state search warrant for the search and seizure of the Apple iPhone described above. A minor female, T.H. was found with SMITH. T.H. stated that she had been staying at the residence and had clothing and personal items inside the residence located in the master bedroom of the home.

23. Agents observed inside the residence the following items, a Samsung laptop, a Dell Inspiration 530S computer, Gateway tower and a Panasonic Web camera mounted on a tripod.

24. T.H. was interviewed by agents and stated she is 16 years old. T.H. met SMITH on or about August 2011. SMITH answered an escort posting for T.H. on Backpage.com. On their first three dates, T.H. and SMITH did not engage in sexual activity, but would smoke marijuana together. SMITH paid T.H. $150.00 (one hundred and fifty dollars) per date. Subsequently, T.H. would engage in sexual activity with SMITH and SMITH would pay her $200.00 in addition to the $150.00 on each occasion. The first time SMITH engaged in sexual intercourse with T.H., SMITH wore a condom. However, thereafter, SMITH did not use condoms during sexual encounters with T.H. T.H. reported that SMITH has taken videos of her engaging in sexual activity utilizing his cellular phone. In approximately November –December 2011, T.H.

told SMITH that she was fifteen years of age. T.H. reported that SMITH would take videos of T.H. nude or engaged in sexual acts using his cellular telephone. T.H. reported that she had viewed the videos of herself on SMITH's telephone. T.H. reported that SMITH had a relationship with girls she knew by the name of A.P. and C.B. and SMITH had known A.P. since the time A.P. was approximately fifteen years old. T.H. saw videos of A.P. and C.B. engaged in sex acts. In addition, T.H. has observed SMITH on his laptop computer reviewing Backpage.com escort advertisements. T.H. explained that SMITH prefers young girls and the advertisements T.H. observed depicted young females. T.H. has also observed SMITH looking at porn sites on the internet depicting young females.

25. T.H. reported that her cellular telephone was purchased and paid for by SMITH but the phone was registered in T.H.'s name. SMITH gave T.H. the telephone approximately one and half to two months ago. T.H. provided written consent for agents to review her cellular telephone. T.H. reported that SMITH sent her a text message a few days prior to August 2, 2012 with a picture of his penis displayed with the message asking T.H. if she wanted, "some sausage." In addition, SMITH, utilizing his cellular phone, communicated with T.H. via text messaging to her cellular phone on other occasions.

26. On February 3, 2012, a federal search was executed at SMITH's residence at 18900 Misty Lake Drive, Jupiter, Florida. Agents seized desktop computers, laptop computers, cellular phones, media devices, and a video camera. An on scene review of data stored on the video camera revealed self-made videos are SMITH, depicting SMITH engaged in sex acts with various females. At least two of the females appear to be pubescent teenage girls. In addition, a DVD was recovered from the home. The DVD featured pubescent teenage girls engaged in various sex acts.

27. Your Affiant, therefore, respectfully requests that a criminal complaint be issued charging FRANK J. SMITH JR. with violations of 18 U.S.C. §§ 2251(a) and 2422(b).

_____
Christina J. Pryor
Special Agent
Federal Bureau of Investigation


Subscribed and sworn to before me this 3rd day of August 2012.

_____
DAVE LEE BRANNON
United States Magistrate Judge

# **BOND RECOMMENDATION**

<u>FRANK JOSEPH SMITH</u>
Defendant

<u>PRETRIAL DETENTION</u> is recommended as to defendant.

_____
A. LOTHROP MORRIS
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 12-8311-DLB

IN RE: Complaint

_____/

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __x__ No

        Respectfully submitted,

        WIFREDO A. FERRER
        UNITED STATES ATTORNEY

BY:    LOTHROP MORRIS
        ASSISTANT UNITED STATES ATTORNEY
        Florida Bar No. 095044
        500 Australian Avenue, Suite 400
        West Palm Beach, FL 33401
        (561) 820-8711
        (561) 820-8777 (FAX)
        LOTHROP.MORRIS@USDOJ.GOV