UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 12-80151-Cr.-MIDDLEBROOKS/BRANNON

UNITED STATES OF AMERICA,

vs.

**FRANK JOSEPH SMITH,**

        Defendant,

_____ /

## PLEA AGREEMENT

The United States of America and FRANK JOSEPH SMITH (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to the Indictment, which charges the defendant with using, persuading, inducing, enticing, and coercing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, which visual depiction was produced using materials, that is, an Apple I Phone, that had been mailed, shipped, and transported in interstate and foreign commerce, by any means, all in violation of Title 18, United States Code, Section 2251(a) and (e).

2. The defendant is aware that the sentence will be imposed by the court after consideration of the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the court relying in part on the results of a Pre-Sentence Investigation by the court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also

aware that, under certain circumstances, the court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence; the court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing these facts, the defendant understands and acknowledges that the court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw his plea solely as a result of the sentence imposed.

3. The defendant understands and acknowledges that the maximum penalties the court may impose under the Indictment is a 15 year mandatory minimum and a maximum of up to life imprisonment; a statutory maximum term of supervised release of Life; a fine of up to two hundred fifty thousand dollars ($250,000.00); and an order of restitution.  The defendant also understands and acknowledges that, upon his release from imprisonment, he will be required to register as a sex offender in accordance with federal law and the laws of the state(s) where he lives, works, and/or attends school.

4. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100 will be imposed on the defendant for each count to which he is pleading guilty. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.

## FACTUAL BASIS

5. If the case went to trial, the United States would prove, beyond a reasonable doubt, the following facts, as well as others:

On February 16, 2012, F.G.C., a cooperating witness (CW1) was interviewed at the West Palm Beach Police Department by Special Agents of the FBI as part of an ongoing child prostitution investigation.

CW1 described that approximately two weeks prior to the interview, she had responded to a prostitution call with an individual by the name of "FRANKIE" (Last Name Unknown). CW1 described "FRANKIE" as an older white male. "FRANKIE" showed CW 1 videos contained in his cellular telephone that depicted what appeared to be underage females engaging in sexually explicit conduct. CW1 later identified a Florida Driver's License photograph of FRANK J. SMITH, JR., as the person she knows as "FRANKIE."

On August 2, 2012, FBI agents were contacted by the Jupiter Police Department in reference to SMITH. On July 28, 2012, the Jupiter Police Department received information from West Palm Beach Police Detective Mark Vertefeuille. Detective Vertefeuille advised that during a lewd battery investigation that he was conducting (which led to an arrest and confession), his fifteen year old victim, B.H, advised that she also had sexual contact with a much older man named FRANK SMITH in Jupiter.

On July 28, 2012, B.H was interviewed in the presence, and with the consent, of her mother at their residence. During the course of a sworn audio taped interview, B.H. advised that sometime after she turned fifteen (which was in August of 2011), her friend T.H. moved in with her and her mother at their current apartment. B.H. advised that at the time T.H. was working for an escort

3

service (not further indentified), and she introduced B.H. to SMITH, who was one of her customers. At the time T.H. was approximately fifteen years of age, according to B.H. The introduction to Smith occurred sometime after August 2011.

B.H. described SMITH, and she advised that he was an older white male in his 60's with slicked back hair and a big nose. B.H. was shown a photo lineup which contained SMITH in position number three. B.H. immediately picked out number three as the person she knows as FRANK SMITH. B.H. was also shown a photo of the home located at 18900 Misty Lake Drive, and she identified the residence as SMITH's home.

B.H advised that Smith would come and pick the girls up at their home in West Palm Beach on a weekly basis. SMITH would take them back to his house in Jupiter, to the beach, or out to eat. B.H. advised that SMITH would supply them with alcohol and marijuana at his house.

B.H. advised that initially SMITH had told her several times that he wanted to have sex with her, but she refused. She advised that at some point, T.H. came to her and said that SMITH wanted to watch them perform oral sex on each one another for money. B.H. advised that she agreed to engage in the sexual act, and that all three of them went into SMITH's guest bedroom. B.H. described that SMITH had an office and that she observed a computer in the office. B.H. stated that she and T.H. performed oral sex on each other while SMITH watched them and videotaped them with his cellular phone. She stated that they were both paid $100.00. She advised that she saw the video of herself and T.H. on SMITH's cellular phone.

B.H. advised that over a period of about seven months, she and T.H. performed oral sex on each other at SMITH's request on several occasions. They were paid for the acts by SMITH on each occasion. B.H. could recall performing oral sex with T.H. at least two times in the living room, and

4

at least three times in the guest room while SMITH either watched or videotaped them on his cell phone.

B.H. advised that sometime between January 2012 and March 2012, she performed oral sex on SMITH one time at his request and was paid $150.00. B.H. advised that SMITH videotaped her performing oral sex on him. She stated that during that same time period, he also took her and T.H. to a Hilton Hotel in Daytona where B.H. and T.H. performed oral sex on each other and were paid for their acts. B.H. advised that she remembers that the sexual acts performed in Daytona by herself and T.H. were videotaped by SMITH on his cellular phone because she saw the video. B.H advised that the majority of the sexual activity between herself, T.H. and SMITH occurred between January of 2012 and March of 2012.

On August 2, 2012, the Jupiter Police Department executed a state search warrant for the search and seizure of the Apple iPhone described above. A minor female, T.H. was found with SMITH. T.H. stated that she had been staying at the residence and had clothing and personal items inside the residence located in the master bedroom of the home.

T.H. was interviewed by agents and stated she is 16 years old. T.H. met SMITH on or about August 2011. SMITH answered an escort posting for T.H. on Backpage.com. On their first three dates, T.H. and SMITH did not engage in sexual activity, but would smoke marijuana together. SMITH paid T.H. $150.00 (one hundred and fifty dollars) per date. Subsequently, T.H. would engage in sexual activity with SMITH and SMITH would pay her $200.00 in addition to the $150.00 on each occasion. The first time SMITH engaged in sexual intercourse with T.H., SMITH wore a condom. However, thereafter, SMITH did not use condoms during sexual encounters with T.H. T.H. reported that SMITH has taken videos of her engaging in sexual activity utilizing his cellular phone.

In approximately November -December 2011, T.H. told SMITH that she was fifteen years of age. T.H. reported that SMITH would take videos of T.H. nude or engaged in sexual acts using his cellular telephone. T.H. reported that she had viewed the videos of herself on SMITH's telephone. T.H. reported that SMITH had a relationship with girls she knew by the name of A.P. and C.B. and SMITH had known A.P. since the time A.P. was approximately fifteen years old. T.H. saw videos of A.P. and C.B. engaged in sex acts. In addition, T.H. has observed SMITH on his laptop computer reviewing Backpage.com escort advertisements. T.H. explained that SMITH prefers young girls and the advertisements T.H. observed depicted young females. T.H. has also observed SMITH looking at porn sites on the internet depicting young females.

T.H. reported that her cellular telephone was purchased and paid for by SMITH but the phone was registered in T.H.'s name. SMITH gave T.H. the telephone approximately one and half to two months ago. T.H. provided written consent for agents to review her cellular telephone. T.H. reported that SMITH sent her a text message a few days prior to August 2, 2012 with a picture of his penis displayed with the message asking T.H. if she wanted, "some sausage." In addition, SMITH, utilizing his cellular phone, communicated with T.H. via text messaging to her cellular phone on other occasions.

Thereafter, a federal search was executed at SMITH's residence at 18900 Misty Lake Drive, Jupiter, Florida. Agents seized desktop computers, laptop computers, cellular phones, media devices, and a video camera. An on scene review of data stored on the video camera revealed self-made videos depicting SMITH engaged in sex acts with various females. At least two of the females appear to be pubescent teenage girls. In addition, a DVD was recovered from the home. The DVD featured pubescent teenage girls engaged in various sex acts.

6. The Office of the United States Attorney for the Southern District of Florida (hereinafter "Office") reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

7. The United States agrees that it will recommend at sentencing that the court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will make a motion requesting an additional one-level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently. The United States, however, will not be required to make this motion and recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not

7

limited to, committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

8. The defendant agrees that he shall cooperate fully with this Office by: (a) providing truthful and complete information and testimony, and producing documents, records and other evidence, when called upon by this Office, whether in interviews, before a grand jury, or at any trial or other Court proceeding; (b) appearing at such grand jury proceedings, hearings, trials, and other judicial proceedings, and at meetings, as may be required by this Office; and (c) if requested by this Office, working in an undercover role under the supervision of, and in compliance with, law enforcement officers and agents. In addition, the defendant agrees that he will not protect any person or entity through false information or omission, that he will not falsely implicate any person or entity, and that he will not commit any further crimes.

9. This Office reserves the right to evaluate the nature and extent of the defendant's cooperation and to make that cooperation, or lack thereof, known to the Court at the time of sentencing. If in the sole and unreviewable judgment of this Office the defendant's cooperation is of such quality and significance to the investigation or prosecution of other criminal matters as to warrant the Court's downward departure from the advisory sentencing range calculated under the Sentencing Guidelines and/or any applicable minimum mandatory sentence, this Office may make a motion prior to sentencing pursuant to Section 5K1.1 of the Sentencing Guidelines and/or Title 18, United States Code, Section 3553(e), or subsequent to sentencing pursuant to Rule 35 of the Federal Rules of Criminal Procedure, informing the Court that the defendant has provided substantial assistance and recommending that the defendant's sentence be reduced. The defendant understands and agrees, however, that nothing in this agreement requires this Office to file any such motions, and

that this Office's assessment of the quality and significance of the defendant's cooperation shall be binding as it relates to the appropriateness of this Office's filing or non-filing of a motion to reduce sentence.

10. The defendant understands and acknowledges that the Court is under no obligation to grant a motion for reduction of sentence filed by the government. In addition, the defendant further understands and acknowledges that the Court is under no obligation of any type to reduce the defendant's sentence because of the defendant's cooperation.

## APPEAL WAIVER

11. The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or a variance from the guideline range that the court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b). However, if the United States appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that he has discussed the appeal waiver set forth in this agreement with his attorney. The defendant further agrees, together with the United States, to request that the district court enter a specific finding that the defendant's waiver of his right to appeal the sentence to be imposed in this case was knowing and voluntary.

12. The defendant is aware that the sentence has not yet been determined by the court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office, or the court. The defendant understands further that any recommendation that the government makes to the court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the court and the court may disregard the recommendation in its entirety, The defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the defendant may not withdraw his plea based upon the court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

13. This is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings unless

contained in a letter from the United States Attorney's Office executed by all parties and counsel prior to the change of plea.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 10/24/12         By: _____
                            LOTHROP MORRIS
                            ASSISTANT UNITED STATES ATTORNEY

Date: 10/23/12         By: _____
                            STUART KAPLAN, ESQ.
                            ATTORNEY FOR DEFENDANT

Date: _____          By: _____
                            FRANK JOSEPH SMITH
                            DEFENDANT